WO

# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Miguel Corzo, | No. CV-15-02552-PHX-ESW |
| Plaintiff, | **ORDER** |
| v. | |
| Maricopa County Community College District, et al., | |
| Defendants. | |

Pending before the Court is Defendants' fully briefed Motion to Dismiss or for More Definite Statement (Doc. 10).  Defendants alternatively seek (i) dismissal of Count II of Plaintiff's First Amended Complaint (Doc. 1-2 at 2-62), which alleges wrongful termination in violation of an implied-in-fact employment contract against the Maricopa County Community College District, or (ii) that the Court order Plaintiff to plead Count II with more particularity.  The case was removed to the United States District Court from the Maricopa County Superior Court of Arizona by Notice of Removal filed December 15, 2015 (Doc. 1-2 at 91-98).  The Federal Court has jurisdiction pursuant to 28 U.S.C. §§ 1331, 1441(c).  The parties have consented to proceeding before a Magistrate Judge pursuant to Rule 73, Fed. R. Civ. P. and 28 U.S.C. § 636(c) (Docs. 6, 8).

After reviewing the parties' submissions, the Court finds that Plaintiff has failed to set forth sufficient facts in his First Amended Complaint that, if true, set forth a cause of action in Count II for wrongful termination in violation of Arizona Employment

Protection Act ("AEPA"). However, Plaintiff has set forth sufficient additional facts in his Response to cure the deficiencies noted herein. Therefore, Defendants' Motion to Dismiss will be denied. Defendants' Motion for More Definite Statement will be granted, and the Court will order Plaintiff to file a Second Amended Complaint consistent with the additional factual allegations Plaintiff has set forth in Plaintiff's Response and the Court's findings herein.

## I. FACTS

Assuming as true all well-pled factual allegations contained in Plaintiff's First Amended Complaint and drawing all reasonable inferences therefrom, Plaintiff alleges the following facts in support of Count II. For purposes of this Rule 12(b)(6), Fed. R. Civ. P., Motion to Dismiss, the Court disregards any of the Defendants' factual contentions to the contrary. *See, e.g., Lee v. City of L.A.,* 250 F.3d 668, 688 (9th Cir. 2001) ("[F]actual challenges to a plaintiff's complaint have no bearing on the legal sufficiency of the allegations under Rule 12(b)(6)."). However, the Court may still consider any internal discrepancies or factual conflicts it finds within the complaint that undermine its plausibility. *See, e.g., Maloney v. Scottsdale Ins. Co.*, 256 F. App'x 29, 31–32 (9th Cir. 2007) (finding that a complaint failed to state a claim upon which relief could be granted based upon factually inconsistent allegations in a complaint that were not pleaded in the alternative, but incorporated into each cause of action).

Plaintiff worked for twenty-eight years for the Maricopa County Community College District ("the District") in various capacities, most recently as a Director in the Information Technology Services ("ITS") Department, managing various information data bases including the Student Information System ("SIS"). He did not have responsibility for, or oversight of, the ITS web server hardware, software, security, or monitoring functions to detect and prevent unauthorized access to the sensitive or confidential personal information of students and employees. His employment terms included information contained in the District's Management, Administrative & Technology ("MAT") Policy Manual and Employment Handbook.

The District is a political subdivision of the State of Arizona, operating under color of State law.  The District operates ten community colleges and several additional educational facilities within Maricopa County.

Through audits performed by the Arizona State Auditor General from 2008 through 2010, the District became aware of and was warned regarding a serious risk of theft, manipulation, or misuse of sensitive or confidential information by unauthorized users of its data.  The first data breach occurred in 2008.  Inadequate steps were taken by the District to prevent a subsequent data breach which occurred in 2011 and was discovered and reported to the District by the FBI.  After the data breach of 2011 by unauthorized third parties, the District's main public web server remained severely compromised and highly vulnerable to continued unauthorized access.  The District remained aware of the inadequacies of its system through additional audits, internal communications, and commissioned consultant reports.  Nevertheless, the District failed to take sufficient steps to protect its data from further unauthorized access.  A massive data breach ensued in 2013, which compromised the confidential data of students and employees.

Prior to the 2013 data breach, Plaintiff became aware of the financial mismanagement of ITS projects, the lack of adequate data security measures, and the risk of a significant breach of confidential data.  Plaintiff was aware that the District's lack of adequate data security measures may result in a violation of State and Federal law.  In 2012, Plaintiff therefore reported to the Chancellor of the District the need to tighten ITS security, the risk of a data breach, and the financial mismanagement of ITS projects.  Plaintiff also reported his intent to file EEOC claims for age and racial discrimination occurring in the ITS Department.

In 2012, Plaintiff filed a formal grievance through the MAT Employee Group and Professional Staff Association (PSA) against the District.  Plaintiff also filed three claims with the U.S. Equal Employment Opportunity Commission ("EEOC").  The District never responded to the MAT and PSA grievance as required by the District's policies and

procedures.

In retaliation for engaging in protected activity through the reporting of (i) data security inadequacies endangering the confidential information of students and employees, (ii) the fiscal mismanagement of the District, and (iii) discriminatory practices within the ITS Department, Plaintiff claims that he was demoted, suffered a pay-cut, and was eventually terminated. The District failed to provide Plaintiff due process in accordance with the MAT policy manual and employee handbook during the District's investigative and hearing procedures conducted regarding Plaintiff's ultimate termination.

## II. LEGAL STANDARDS

### A. Rule 12(b)(6), Fed. R. Civ. P.

Rule 12(b)(6), Fed. R. Civ. P., is designed to "test[]the legal sufficiency of a claim." *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001). A Rule 12(b)(6) dismissal for failure to state a claim can be based on either (i) the lack of a cognizable legal theory or (ii) insufficient facts to support a cognizable legal claim. *Conservation Force v. Salazar*, 646 F. 3d 1240, 1242 (9th Cir. 2011), cert. denied, *Blasquez v. Salazar*, 132 S. Ct. 1762 (2012). In deciding a Rule 12(b)(6) motion to dismiss, Courts must consider all well-pled factual allegations in the Complaint as true and interpret them in a light most favorable to the non-moving party. *Schlegel v. Wells Fargo Bank, NA*, 720 F.3d 1204, 1207 (9th Cir. 2013). While "a complaint need not contain detailed factual allegations . . . it must plead 'enough facts to state a claim to relief that is plausible on its face.'" *Clemens v. Daimler Chrysler Corp.*, 534 F.3d 1017, 1022 (9th Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts in improbable, and 'that a recovery is very remote and unlikely.'" *Twombly*, 550 U.S. at 556 (quoting *Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974)). "[F]or a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Moss v.*

*U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  In other words, the complaint must contain enough factual content "to raise a reasonable expectation that discovery will reveal evidence" of the claim. *Twombly*, 550 U.S. at 556.  Legal conclusions couched as factual allegations are not given a presumption of truthfulness, and "conclusory allegations of law and unwarranted inferences are not sufficient to defeat a motion to dismiss." *Pareto v. FDIC*, 139 F.3d 696, 699 (9th Cir. 1998).

### B. Wrongful Termination—the AEPA

The AEPA applies to all employees, whether public or private. *Mullenaux v. Graham County*, 82 P.3d 362, 367 (Ariz. Ct. App. 2004); *Cronin v. Sheldon*, 991 P.2d 231 (Ariz. 1999) (upholding the constitutionality of the statutory text).  The legislature's intent in enacting the AEPA was to limit the circumstances in which a terminated employee can sue an employer for wrongful termination to those situations involving a written contract of employment or an employer having violated public policy as set forth in the Arizona Constitution or statutes. *Taylor v. Graham County Chamber of Commerce*, 33 P.3d 518, 528 (Ariz. Ct. App. 2001) (quoting *Johnson v. Hispanic Broadcasters of Tucson, Inc.*, 2 P.3d 687, 689 (Ariz. Ct. App. 2000)).  To challenge a termination of employment under the AEPA, an employee must demonstrate

> one of four theories of liability in order to state a claim as a matter of law:  (1) termination in breach of a written contract (signed by both the employer and employee or expressly included in an employment handbook) setting forth that the employment relationship shall remain in effect for a specified duration of time or otherwise expressly restricting the right of either party to terminate the employment relationship; (2) termination in violation of an Arizona statute; (3) termination in retaliation for the refusal to violate the Arizona Constitution or an Arizona statute; or (4) in the case of a public employee, if the employee has a right to continued employment under either the United States or Arizona Constitution.

*Bodett v. Coxcom, Inc.*, 366 F.3d 736, 746 (9th Cir. 2004); ARIZ. REV. STAT. § 23–1501(A)(2), (3)(a)-(c).  Otherwise, an employment relationship is severable at will.

1   ARIZ. REV. STAT. § 23-1501(A)(2).

2        The AEPA codifies the few situations in which the presumption of at-will

3   employment may be rebutted.   Before the AEPA was enacted in 1996, wrongful

4   termination cases were governed by common law and developing exceptions to the at-

5   will employment doctrine.   *See Wagenseller v. Scottsdale Mem'l Hospital*, 710 P.2d

6   1025, 1033 (Ariz. 1985) (holding that at-will employees may be fired for good cause or

7   for no cause, but not for bad cause); *Leikvold v. Valley View Community Hospital*, 688

8   P.2d 170, 172 (Ariz. 1984) (holding that employer's representations in a policy manual

9   can become part of an employment contract, limiting employer's ability to discharge

10  employees).  In *Wagenseller*, the Arizona Supreme Court specifically recognized that an

11  implied-in-fact contract term may be implied from the conduct of the parties and operate

12  as an exception to the at-will rule.  710 P.2d at 1037.  In enacting the AEPA, however,

13  the Arizona Legislature rejected the judicial expansion of exceptions to the at-will

14  employment doctrine espoused in *Wagenseller* and its progeny.  *See* AEPA Ch. 140, § 1,

15  para. A, 1996 Ariz. Sess. Laws 683, 684.  The AEPA explicitly changes the Court's

16  inquiry from whether an employment agreement is enforceable at common law to

17  whether the employment agreement satisfies the statutory requirements of the AEPA.

18  *See Johnson*, 2 P.3d at 690.

19        In pertinent part, ARIZ. REV. STAT. § 23–1501(A)(2) provides:

20            The employment relationship is severable at the pleasure of
              either the employee or the employer unless both the employee
21            and the employer have signed a written contract to the
              contrary setting forth that the employment relationship shall
22            remain in effect for a specified duration of time or otherwise
              expressly restricting the right of either party to terminate the
23            employment relationship.   Both the employee and the
              employer must sign this written contract, or this written
24            contract must be set forth in the employment handbook or
              manual or any similar document distributed to the employee,
25            if that document expresses the intent that it is a contract of
              employment, or this written contract must be set forth in a
26            writing signed by the party to be charged . . . .

27

28

The first sentence of ARIZ. REV. STAT. § 23-1501(A)(2) is clear.  In order to rebut the presumption of an at-will employment relationship for which no cause of action for wrongful termination lies, Plaintiff must prove that a written employment contract signed by both parties exists that meets either of two substantive requirements.  The contract either (1) must state that the employment relationship has a specified duration of time or (2) must expressly restrict the right of either party to terminate the employment relationship.  The second sentence of the statute, however, sets forth three alternative methods to establish the existence of an employment contract that meets the signing requirement as stated in sentence one.   "Under traditional canons of statutory interpretation, because the second sentence is more specific as to the signing requirement than the first, the second sentence with its three alternatives will govern."  *White v. AKDHC, LLC*, 664 F. Supp. 2d 1054, 1062 (D. Ariz. 2009) (citing *NLRB v. A-Plus Roofing*, 39 F. 3d 1410, 1415 (9th Cir. 1994) (specific statutory provisions prevail over general provisions)).   Specifically, the second sentence states that a written contract meeting either of the initial two substantive requirements must (1) be signed by both parties, (2) be signed by the party to be charged, or (3) be included in an employment handbook, manual, or similar document that expresses an intent for it to be an employment contract.

Therefore, to prevail on a wrongful termination claim for breach of contract under the AEPA, Plaintiff must prove that there is a written contract that meets one of the two substantive requirements of sentence one and one of the three alternative formalities of sentence two of ARIZ. REV. STAT. § 23-1501(A)(2).  In determining whether Plaintiff has met his burden of proof, the Court must apply common law principals of contract interpretation and give effect to the parties' intent.  *See White*, 664 F. Supp. 2d at 1063, (citing *Johnson*, 2 P.3d at 689).  In determining whether an employment agreement satisfies the requirements of ARIZ. REV. STAT. § 23-1501, the Arizona Supreme Court has applied the rules governing cases involving the statute of frauds.  *Johnson*, 2 P.3d at 689. Hence, if an employment agreement is "reasonably susceptible" to the interpretation

- 7 -

asserted by its proponent, extrinsic evidence is admissible to interpret its terms, but not to supply a required element.  *Id.* (citing *Taylor v. State Farm Mut. Auto. Inc. Co.*, 854 P.2d 1134, 1140 (Ariz. 1993)).

### III. DISCUSSION

Count II of Plaintiff's First Amended Complaint specifically alleges the breach of an "implied-in-fact" written contract "created through the terms and conditions set forth in an employee handbook" and that "such a contract was created through the District's employee handbook."  ARIZ. REV. STAT. § 23-1501(A)(3)(a).  (Doc. 1-2 at 53).  In analyzing sentence one of ARIZ. REV. STAT. § 23-1501(A)(2), the Court finds that Plaintiff  has not alleged a written contract that "otherwise expressly restricts the right of either party to terminate the employment relationship," rather than procedural formalities for doing so.  *Id.*  Instead, Plaintiff alleges that "[t]he actions of the District demonstrate it intended the provisions of its employment manual to limit the District's right to terminate the employment relationship."  (Doc. 1-2 at 53).  Sentence one of ARIZ. REV. STAT. § 23-1501(A)(2) requires that the written contract itself meet the substantive requirement of AEPA.  The action and words of a contracting party from which the Court may imply-in-fact contract terms are not sufficient to meet the substantive hurdle of sentence one.  *See Johnson*, 2 P.3d at 691 ("The word 'expressly' means 'in direct or unmistakable terms[;] . . . 'directly and distinctly stated; expressed, not merely implied or left to inference.'") (citations omitted).  However, the Court finds that Plaintiff has alleged additional facts in his Response which meet the AEPA's substantive requirement. Plaintiff therefore will be allowed to amend his First Amended Complaint to allege the facts set forth in his Response.

As to the sentence two formalities of ARIZ. REV. STAT. § 23-1501(A)(2), Plaintiff fails to allege that the written terms and conditions of the employment handbook or MAT Manual "expresses the intent that it is a contract of employment . . . ."  *See Taylor v. Graham County Chamber of Commerce*, 33 P.3d 518, 527 (Ariz. Ct. App. 2001) (finding that a signed, written contract is not required if the employee handbook expresses the

intent that it is a contract of employment).   A more definitive statement is deemed necessary.  The Court further finds that sufficient facts are alleged in Plaintiff's Response to support the written contract formalities of sentence two, and amendment would set forth sufficient facts to satisfy a cause of action for wrongful termination.   Leave to amend shall be granted.

The Court notes that though nothing in the AEPA prevents an employer and employee from further defining their relationship, the AEPA does require that the written contract minimally meet not only the written substantive requirement, but also one of three formalities to constitute a written contract from which a breach of contract action for wrongful termination may arise.   *See, e.g., Guz v. Bechtel National, Inc*., 8 P.3d 1089, 1101 (Cal. 2000) ("One example of a contractual departure from at-will status is an agreement that the employee will be terminated only for 'good cause' . . ." (citing *Foley v. Interactive Data Corp*., 765 P. 2d 373, 385 (Cal. 1988)).   A breach of contract may occur beyond the context of public policy statutes and the wrongful termination of employment, however.   Here, Plaintiff also has alleged that procedures adopted by his employer, set forth in the employee handbook, and relied upon by the employee regarding investigation of wrong-doing and ultimate termination of a non-probationary employee were not followed by the District.   Plaintiff alleges not only wrongful termination but also breach of an "employment agreement" and breach of the duty "to act fairly and in good faith regarding the employment contract."  (Doc. 1-2 at 53, ¶¶ 323, 324).   The Court finds that Count II of Plaintiff's First Amended Complaint is ambiguous.   Count II of Plaintiff's Complaint seems to contain multiple theories of liability arising from the District's actions and inaction during the parties' employment relationship.   *See White*, 664 F. Supp. 2d 1065 ("[A] viable claim for  breach of the implied covenant may lie if a plaintiff is alleging that conduct other than the termination itself breached the covenant.") (citing *Comeaux v. Brown & Williamson Tobacco Co*., 915 F. 2d 1264, 1272 (9th Cir. 1990)).   However, to support a claim for wrongful termination as Count II is entitled, Plaintiff specifically must allege facts beyond the

conduct of the parties to meet the AEPA requirements above and set forth a cause of action for wrongful termination under the AEPA on breach of contract.  Plaintiff has done so in his Response (Doc. 11 at 12-16).  The Court will grant Plaintiff leave to amend to add the factual allegations set forth in his Response as well as clarify and separate his theories of liability if Plaintiff intended to allege causes of action arising from conduct other than the termination itself.

### CONCLUSION

For the reasons set forth herein,

**IT IS ORDERED** denying Defendants' Motion to Dismiss (Doc. 10).

**IT IS FURTHER ORDERED** granting Defendants' Motion for More Definite Statement (Doc. 10).

**IT IS FURTHER ORDERED** that Plaintiff shall file a Second Amended Complaint alleging those facts set forth in his Response (Doc. 11 at 12-16) and clarifying and separating his cause(s) of action, if any, within ten (10) business days of the filing of this Order.

Dated this 14th day of June, 2016.

_____

Eileen S. Willett
United States Magistrate Judge